(Opinion published 56 N. W. Rep. 168.)

---

MARY E. HALE *et al. vs.* CITY OF ST. PAUL *et al.*

Argued May 24, 1893. Decided Aug. 21, 1893.

**A Will Construed.**

> A will disposing of a large estate provided for the estate being held in trust and administered during a possible period of twenty-five years, before final distribution to the residuary legatees and devisees. There were debts to a large amount, some of which greatly exceeded the yearly income of the estate. The testator gave to various persons and charities legacies of specific amounts, mostly payable in ten annual installments. He then (in item 18) gave to two brothers and to his widow, each, for

life, or during the trust term of twenty-five years, one-fourth of the "net income of my estate * * * subject to the payment of my debts and the legacies and installments of legacies above mentioned as they shall fall due;" and (by item 19) he gave to certain other kindred the remaining one-fourth of "said net income subject to the payment of the debts and legacies aforesaid." The above-recited provisions construed as subjecting the "income," and not the "estate," to the payment of the debts and fixed legacies; the remainder of the income, after such application, being the "net income" bequeathed by items 18 and 19 of the will.

### Further Provisions of the Will Construed.

Will further construed (other important provisions being referred to) as contemplating that the administration of the estate during each year should be treated as an entirety, or by itself; each year's income being used first to pay the annual installments or the fixed legacies payable in that year, and the debts which may fall due in the same year, the remainder of that year's income being payable to the legatees named in items 18 and 19. The will did not contemplate an accumulation or reservation of any year's income to pay legacies or debts to fall due in any succeeding year.

### Same.

It did not contemplate that mortgaged real estate should be the primary fund for the payment of the mortgage debts.

### Construction Preferred which Favors, Near, Rather than Remote, Kindred.

A construction of a will is not to be preferred which greatly restricts, to the advantage of more remote beneficiaries, the provisions which may well be regarded as having been made in behalf of nearer and more favored objects of the testator's bounty.

Appeal by defendants, the City of St. Paul, William B. Hale and twenty others, from a judgment of the District Court of Ramsey County, *Hascal R. Brill*, J., entered September 16, 1892.

Henry Hale, late of St. Paul, died testate December 7, 1890, leaving a widow, brothers, sisters, nephews and nieces, but no children. His will was proved and allowed in the Probate Court of Ramsey County, and the plaintiffs received letters testamentary. Doubts having arisen as to the proper construction of the will, the executors brought this action against all parties in interest to have the will construed. It is long, and would require more than fifteen pages of this report to set it forth at length. The City of St. Paul was made defendant because to it was given,

eventually, a large part of the estate. By the 26th clause, one equal one-half of the estate existing at the expiration of the trust term of not exceeding twenty-five years from his death, was devised and bequeathed thereafter to the City, in trust to found and maintain forever a free medical dispensary and a free public library, both to be under the management and control of a board of five trustees to consist of the Mayor, Comptroller and City Attorney of St. Paul, the Probate Judge, and oldest member in continuous service of the Board of County Commissioners of Ramsey County. The testator therein said:

"It is not my wish to direct or control, as to the details of the management of said estate, except as above indicated, but these are left to the wisdom and discretion of the board of trustees, who will be responsible to the community to be benefited thereby, for the proper execution of said trust. But I direct that the income and avails of said estate be faithfully devoted to the purposes above specified, and no other, and without impairing the principal of said estate further than may be indispensably necessary. It is my earnest hope that the people of the City of St. Paul and of the County of Ramsey will not fail to elect to the above-named offices persons of such character and capacity as to insure the faithful execution of this trust, as in the event of such failure there will be great danger that the inhabitants of said City and County will lose the benefits which it is my wish that they should derive from this provision in my will. Universal suffrage will prove to be a failure whenever it results in elevating unworthy men to places of trust and honor, and a free community that shall fail, through its fairly chosen agents, faithfully to administer and to preserve from waste a trust providing funds for the support of their own poor, the care of their sick, and for the instruction and improvement of all classes among them, will prove themselves to be incapable of self-government, and wanting in the great qualities necessary to preserve and transmit, unimpaired, the free institutions which we have inherited from our fathers."

The principal question presented is, whether the debts and legacies are to be paid out of the income, or whether the principal can be encroached upon for this purpose.

*M. D. Grover* and *Matthew Hale*, for the legatees.

The debts and legacies should be paid from the principal if the income of the estate proves insufficient. This contention arises between the persons to whom an income for life is given, and the residuary devisees and legatees. The leading case in this country on this subject is *Williamson* v. *Williamson*, 6 Paige, Ch. 298. It has been followed in *Minot* v. *Amory*, 2 Cush. 377; *Lovering* v. *Minot*, 9 Cush. 151; *Treadwell* v. *Cordis*, 5 Gray, 341; *Green* v. *Green*, 30 N. J. Eq. 451; *Marsh* v. *Taylor*, 43 N. J. Eq. 1; *Allhusen* v. *Whittell*, L. R. 4 Eq. 295.

Unless there is something in the terms of this will which takes it out of the general rule, the legatees of income are entitled to have the income of the estate ascertained by deducting from the principal the amount necessary in order to pay the debts and legacies, as of the date of the death of the testator. Of course, there may be some difficulty in working this out by reason of the property being so largely in real estate. But this circumstance does not affect the principle, which is, that debts and legacies in the absence of the provisions to the contrary in the will, are to be considered as paid out of the principal of the estate, as of the date of the death of the testator, and the legatees of income are entitled to have the interest or income upon the residue of the principal or capital from the death of the testator.

The provisions of the will do not indicate any intention on the part of the testator that debts and legacies should not be paid in the usual way, from the principal of the estate.

*Leon T. Chamberlain* and *Herman W. Phillips*, for the City.

DICKINSON, J. This action was brought by the executors of the will of Henry Hale, deceased, against the devisees and legatees, to secure a judicial determination as to the construction of the will in certain particulars, and hence as to the duties of the executors. The will was executed in November, 1890. The testator died about a month thereafter. The appraised value of his estate real and personal, was $1,205,481.40; but, by the second item in the will, certain real and personal property was given absolutely to the wife, and the appraised value of the remainder of the estate,

with which this controversy is connected, was, real estate, $770,-050, and personal property, $74,331, making a total of $844,381. The estate was incumbered by debts, secured by mortgages, to the amount of $173,000.   Of this amount, $80,000 became due in November, 1891, and $75,000 will mature in August, 1893.   Eighteen thousand dollars will mature in 1896, but this has been assumed by the widow, and will be paid out of her estate.   The testator also owed unsecured debts, due at the time of his death, to the amount of over $53,000, which have been paid out of the personal estate.   In the first year following the death of the testator the estate realized an income of over $50,000 from rents; and it is conceded that the fair average rental is now $50,000 a year, and the expenses of the estate (for taxes, insurance, repairs, compensation of executors, etc.) are about $23,300, leaving a net yearly income of about $26,700.   If interest on the mortgage debts were to be paid out of the income, this sum would be diminished to the extent of $9,200, leaving the net income, while the mortgage debts should remain unpaid, about $17,500.   Before referring particularly to the provisions of the will, it may be said that the matter of doubt, rendering a judicial construction necessary, is as to whether the debts and the specific legacies given by items 3 to 17, inclusive, and item 20, are to be paid only out of the income of the estate, so far as that may be sufficient therefor, leaving the legacies named in items 18 and 19 to be paid only out of the remainder of such income, if there shall be any such remainder, or whether the principal or body of the personal estate, and, if necessary, the real estate, may be appropriated for the payment of the debts and the legacies given by items 3 to 17 and item 20, so that items 18 and 19 may be fully paid out of the income, as therein specified.   We will refer now to the provisions of the will:

Item 1 directs the payment of debts out of the estate, so that the property devised to the wife by item 2 may be free from incumbrance.   Item 2 devises and bequeaths to the wife certain specified real and personal property.   Items 3 to 17, inclusive, and item 20, give specific legacies, amounting in all to $173,000, the most of which are payable in ten annual installments.   One, of $20,000, is payable in twenty annual installments.   The annual payments for ten years, under these legacies, will amount to a little over

$17,000. The most of these bequests are to persons bearing relations of kinship with the testator, but they include bequests to the amount of $50,000 in favor of certain public charities. These items of the will contain no provision as to whether these legacies shall be paid out of the income or the body of the estate. Whatever direction there is in that particular is to be found in other parts of the will. Item 18 contains bequests to the wife of the testator, and to his brothers, William B. Hale and Matthew Hale. The testator therein bequeathed to each of these three persons "one equal fourth part of the net income of my estate, real and personal, during her and his natural life, respectively, subject to the payment of my debts, and the legacies and installments of legacies above mentioned, as they shall fall due." By the further terms of this item of the will, it appears that these bequests—of three-fourths of the income, as above specified—were to continue during the term of twenty-five years, or of the continuance of two specified lives in being, during which the estate was to be held in trust as specified in item 21 of the will. In case of the death within that time of the legatees last named, the same bequests were to become payable to persons whom they might have appointed, or to other persons named in the will. Item 19 bequeathed the remaining one-fourth of "said net income, subject to the payment of the debts and legacies aforesaid," to other kindred named. In item 21 the testator appointed the three persons named as legatees in item 18,—his wife and two brothers,—together with one Clarke, as executors of the will, "hereby investing them with full power to pay my just debts, the legacies above named, and each of the above-named installments, and to sell any of my personal assets for that purpose, if it should be necessary, but not otherwise, except to invest and reinvest the proceeds thereof as in their discretion they may deem most advantageous to my estate, and in case of any further deficiency, or if it should be deemed advisable by them to rebuild or improve said real estate or any part thereof, to sell or mortgage, in their discretion, such part of my real estate as may be necessary for such purpose, but no more." The possession and control of the estate, real and personal, and the income thereof, are declared to be given to the executors in trust for the purposes specified, which trust is to continue for the period of twenty-five years,

if two persons named should live so long. In item 24 the testator expressed his desire that the executors should exercise their discretion in paying any one or all of the $10,000 bequests, as well as the bequests for less amounts, at one time in lieu of paying them in installments, "if there should be sufficient funds for the purpose." This would be applicable to all but two of the bequests given by items 3 to 17 and item 20 of the will. Item 26 devises and bequeaths—after the expiration of the trust term, as specified in item 21—all the estate of the testator, real and personal, "subject to the payment in full of all the legacies and installments of legacies and income hereinbefore provided for that may remain unpaid." One-fourth is given to the wife, one-fourth to the nephews and nieces, and one-half to the city of St. Paul, in trust for specified charitable and public purposes.

By the judgment of the district court, which is here for review, the will was construed, in substance, so far as need be here stated, as follows: (1) The legacies provided for in items 3 to 17 and in item 20, and the debts of the testator, are to be paid, as they become due, out of the income of the estate, so far as it will go, and not out of the principal, except upon the contingency and to the extent hereafter mentioned. (2) After the payment of the installments of the legacies provided for in said items 3 to 17 and 20, payable in any year, and the payment of the debts due that year, if any, out of the annual income, the remainder of the income in any year shall be held in reserve, to be applied towards the payment of the debts, until such debts are fully paid; and, after the said debts are fully paid, then the net income in any year, after the payment of the installments of said legacies payable that year, shall be applied in payment of the legacies named in items 18 and 19, subject, however, to the election of the executors to apply the same as provided in item 24 of the will, and in no event shall any portion of the income be paid to the legatees named in items 18 and 19 until the entire debts of the testator shall have been paid. (3) If the income in any year, and the amount of income accumulated as aforesaid, is not sufficient to pay the installments of legacies named in items 3 to 17 and 20 becoming due that year, and the indebtedness due that year, the executors have power to sell sufficient personal property to pay

the deficiency. If that shall not be sufficient for such purposes, the executors are empowered to mortgage or sell real estate.

It will be seen that by this construction of the will both the fixed legacies given by items 3 to 17 and 20, and the large amount of debts of the testator, are to be paid out of the income, so far as that may suffice therefor, and not primarily out of the principal or body, of the estate; that not merely the income on hand when such legacies and debts may become due is to be devoted to the payment of the same, but that the remainder of the annual income, after paying the annual installments of legacies given by items 3 to 17 and 20, is to be accumulated and reserved so far as may be necessary to meet and pay debts to become due at any future time; and that no part of the income is to be paid to the legatees named in items 18 and 19 until the entire debts shall have been fully paid from the income. To determine whether this is a correct construction of the will, it is necessary to consider more particularly those provisions found in item 18, giving to the wife and two brothers named, each, one-fourth part of the "net income of my estate, real and personal, during her and his natural life, respectively, subject to the payment of my debts and the legacies and installments of legacies above mentioned as they shall fall due," and in item 19, giving to the kindred therein named "the remaining equal one-fourth part of said net income subject to the payment of the debts and legacies aforesaid, for and during her natural life." To what does the qualifying clause, "subject to the payment," etc., relate? Is it the estate, or the income of the estate, that is "subject," etc.? The eighteenth item of the will, standing alone, is ambiguous in this particular. The qualifying clause, "subject," etc., might refer either to the immediately preceding antecedent word, "estate," or to that more remote, "income." Grammatically, the former construction would be preferable; but there is reason for the other view, in the fact that it is the "net" income of the estate which is here disposed of, and the qualifying clause, "subject," etc., may well be regarded as indicating the meaning of the testator in the expression, "net income." This, we think, is the more natural, and probably correct, construction. But when we consider item 19 it is still more apparent that, in the use of that language, the testator meant the qualifying clause, "subject," etc.,

to refer to the word "income," rather than the word "estate," for in the nineteenth item, where the same qualifying clause follows the words "said net income," the word "income" is the only antecedent to which the clause, "subject," etc., can refer. Items 18 and 19 are so related to each other—the latter employing language so nearly like that in the former, and even (in the words "said net income") showing that the same idea runs through both—that it is most reasonable to construe them as having the same general meaning, and the form of expression in the latter makes more clear the ambiguous language of the former. Thus far, our views are in harmony with the decision of the district court. But it does not necessarily follow that the entire income of the estate is to be devoted to the payment, not only of the fixed legacies or annuities provided for in items 3 to 17 and 20 as they shall fall due, but also as to the payment of the debts of the estate until such debts shall be fully paid, nor that the income for any year is to be reserved, or the income for several years accumulated, for the payment of debts to fall due in a succeeding or subsequent year.

If we are right in the construction, so far as above indicated, two different views as to the further construction and effect of the will may now be considered, and one or the other must be adopted. One is that which is expressed in the judgment of the district court, which, in brief, absolutely devotes the entire income, accumulating it from year to year as far as necessary, to the payment of the fixed annuities and the debts of the estate until such debts shall be fully paid therefrom. The other possible construction is to treat the administration of the estate for each year, as respects the matter in question, as an entirety, or by itself, and from each year's income pay, so far as may be possible, (after the payment of current expenses,) the fixed legacies (annuities) payable in that year, and any debts which may fall due in the same year, and pay the remainder of the year's income to the beneficiaries named in items 18 and 19 of the will. After a patient consideration of the subject, we are confident that no construction is possible which will be free from some reasonable objections. We, however, adopt the latter of these two theories, as being, in our opinion, the one most in accordance with the expressed intention of

the testator, as gathered from all the provisions of the will, and the judgment appealed from will be modified so as to conform thereto.

The former of these two theories of construction cannot be sustained, and must be rejected. It must be supposed to have been known to the testator that it would become necessary to resort to the principal or body of the estate to pay the debts of the estate and the specified legacies, in the form of annuities, which he directed to be paid "as they shall fall due." At the time of his death, only a few weeks after the making of his will, there were unsecured debts to the amount of $53,000 then due and payable. There was a mortgage debt of $80,000, to fall due in less than one year after his death, and in August, 1893, a mortgage debt of $75,000 was to fall due. The fixed legacies (annuities) payable each year amounted to over $17,000. So that during the first three years after his death there were to be paid, as they should fall due, debts and annuities amounting to about $259,000, while the yearly income was in the vicinity of $50,000. We are to presume that the testator knew, approximately, what the yearly income would be. It was therefore apparent that it would become probably necessary, for the payment of debts and fixed legacies, to draw upon the principal funds of the estate, to the extent of more than $100,000, during the first three years of the administration, even though the whole income, during that period, should be applied to the payment of such debts and fixed legacies. It would be difficult to avoid the conclusion that the testator intended that the funds of the estate, other than the yearly accruing income, should be applied, to a large amount, in the payment of such fixed obligations. Moreover, by item 24, the executors were empowered to pay off the fixed legacies, to a very large amount, in gross, instead of annual installments, if there should be funds; and yet there is in the will no expression of an intention that the income accruing subsequent to any appropriation of the principal of the estate to the payment of debts shall be applied to make good or restore the funds thus taken from the principal. And although there were years prior to the maturity of the latest maturing debt (in 1896) in which no debts were to fall due, and in which the yearly income might be expected to largely exceed the amount of the fixed an-

nuities payable therefrom, yet there is no expressed intention that
such income shall be reserved or accumulated to pay debts to fall
due in a subsequent year. It is to be concluded that such was
not the intention of the testator. That would, in effect, be to
appropriate the income to the payment of debts before, instead of
"as they shall fall due." On the contrary, the other theory is
more consistent with what seems to have been the general purpose
of the testator,—that the estate should be held in trust for a period
of years during which the numerous beneficiaries, including those
named in the eighteenth and nineteenth items, should, each year, re-
ceive substantial sums for their present benefit. The mind is strongly
led to the conclusion that the testator intended that the yearly in-
come should be thus expended, rather than that it should be retained
and accumulated from year to year, excluding the beneficiaries named
in the eighteenth and nineteenth items of the will, during the
period of such accumulation, from any benefit. Provision is made
for paying out the income, but not for accumulating it. Besides
his wife, those persons consisted, in part, of two brothers of the
testator, for whom no provision is made, excepting that under con-
sideration,—a proportion of the net income. Among the large
number of kindred to whom legacies were made, they stood in the
nearest relations of kinship to the testator. They were trusted
to be executors of this large estate, and without bonds. While
another executor, not akin to the testator, was allowed $2,000 a
year as compensation, the testator made no specific allowance, as
compensation, for the services of these brothers as executors, for
the reason, as expressed in the will, that the legacies to them were
deemed sufficient to cover such compensation. They may safely be
regarded as favored objects of the testator's bounty, for whose
benefit the income of the estate should presently, or at least in
the near future, be available. That benefit partook of the character
of an annuity, and should be regarded as intended to be such,
except in so far as, under the specific provisions already con-
sidered, the income may be exhausted in the payment of debts in
any one or more of the three or four years in which debts were
to fall due. That the testator intended the legacies given by item
18 to be of the character of annuities is further shown by the
provision in item 21 to the effect that if the trust period should

be abbreviated by the death of the two persons upon the duration of whose lives it depended, so as to terminate the "income" payable to the persons named in item 18, the executors were to pay to them, in gross, "the present worth of an annuity" for the unexpired portion of the term of twenty-five years, equal to the amount of the "income" to which such persons would otherwise have been "annually entitled."

Regarding these persons, particularly the widow and the two brothers, as prominent and favored objects of the testator's bounty, a construction of the will is not to be preferred which would greatly narrow, or long postpone, in favor of more remote beneficiaries, the provision which seems to have been made in behalf of the former. *Lovering* v. *Minot*, 9 Cush. 151; *Treadwell* v. *Cordis*, 5 Gray, 341. The construction adopted by the District Court, involving an accumulation of the income for the payment of debts until all the debts should mature and be paid from such accumulations, as far as possible, would necessarily and certainly deprive these residuary legatees (of income) of all benefit from this legacy for a period of several years after the ·death of the testator; and if the contention of the city of St. Paul, and other beneficiaries to whom the final residuum of the estate is to go, is correct,—that the income, even after the payment of the debts, is to be applied to restore to the body of the estate whatever had been taken therefrom to pay debts,—the entire fund from which alone these annuitants, if they may be so termed, could derive any benefit, would be for many years wholly taken away from them. In the mean time they, as executors, were to undertake and carry on, without compensation, the administration and management of this large estate. Moreover, the increasing ages of these persons—now over sixty years—adds to the probability that the testator did not contemplate that the entire income from which he intended they should enjoy substantial benefits personally, and during their lifetime, should, for a considerable period of years, be wholly unavailable for that purpose. It is true that the construction which we adopt may result in thus depriving these residuary legatees (of increase) of any benefit therefrom in any one or more of the three or four years in which debts may fall due. As we construe the ·express qualification of the gift to them of the "net income, sub-

ject," etc., that result seems to be inevitable. But only to that extent should these annuities fail.

It is urged on the part of these residuary legatees (of income) that the mortgage debts should be treated as primarily payable from the mortgaged property. This, we think, would be contrary to the expressed intention of the testator,—particularly in item 21,— that the real property should not be resorted to for the payment of debts unless the personal property should be insufficient.

It appears that the executors paid the $53,000 of unsecured debts, and the expenses of the administration, "out of said personal estate." Without knowing further the circumstances, and although our attention was not called to this particular feature of the case, we will say that we see no reason to doubt the propriety of the application of any money of the estate, when it came into the hands of the executors, to the payment of such debts, presently due, and that it was not necessary to retain such funds in order that the income alone might be applied to that purpose. Our conclusion is that the judgment of the District Court should be modified so as to conform to the construction of the will hereinbefore announced. The form of the amended judgment to be entered in the District Court will be settled before a judge of that court. The costs of the appeal should be paid out of the estate.

Sickness prevented the attendance of VANDERBURGH, J., at the hearing of this case.

(Opinion published 56 N. W. Rep. 63.)